*363 OPINION.
Love:
Briefly stated, petitioner asserts that by reason of a guaranty given by him to the Federal Reserve Bank to insure the payment of the indebtedness, owing to that institution by the Crowley Bank, he was obliged to pay the Federal Reserve Bank during the taxable year involved the amount of $17,333.32, and that the amount so paid is deductible as a bad debt in the year of its payment. Petitioner contends that the debt was worthless because liabilities of the Crowlej’’ Bank in 1923 were equal to approximately twice the actual value of its assets at that time.
The respondent determined that the payment was an assessment, or in the nature of an assessment, on the petitioner’s stock in the Crowley Bank, and he accordingly denied the deduction claimed. The Board has held that an assessment on the stock of a national bank is an additional investment of capital and not a loss. Harry E. Lutz, 2 B. T. A. 484; John G. Paxton, 7 B. T. A. 92; W. R. Ranney, 16 B. T. A. 1399; B. Estes Vaughan, 17 B. T. A. 620.
The petitioner’s case has been presented upon the theory that the $17,333.32 payment made by him during 1923 was a payment under the guaranty of July 23, 1920, and the series of like instruments executed by him, or in other words, that it was a payment upon the debt of the Crowley Bank required of him by reason of his liability under the contract of guaranty of the debt of that bank to the Federal Reserve Bank. We think the facts adduced present a substantially different transaction. It appears that during 1923 the Federal Reserve Bank required the Crowley Bank to reduce its indebtedness by the amount of $250,000. It' does not appear that the persons who were obligated by the guaranty contract were *364 called upon as such guarantors to make the payment required by the Federal Reserve Bank. They were called upon to pay $250,000 into the Crowley Bank, and at the suggestion or demand of the Federal Reserve Bank this sum was credited to the building account of the Crowley Bank and applied to reduce its debt to the Federal Reserve Bank.
From the point of view of the Federal Reserve Bank it was more advantageous to adopt this method of reducing its rediscounts to the Crowley Bank than it would have been to call upon the guarantors to make good as such, because-by this method the rediscounts were reduced and the Federal Reserve Bank retained all the collateral, while if the reduction had been effected by requiring the guarantors to make payment, the guarantors would have been sub-rogated to claims and collateral security to the amount of their payments.
Presumably, if the payment mentioned had not been made the Crowley Bank would have been called upon by the Federal Reserve Bank for reduction or complete liquidation of its rediscounts, and, accepting the petitioner’s theory that it was then in fact insolvent, this would have precipitated its failure. Upon failure of the Crowley Bank or its financial embarrassment to the extent of being unable to take up its rediscounts, the petitioner and his coguarantors would have had to make good their guaranties and it is probable would have had to pay for more than $250,000. By satisfying the requirements of the Federal Reserve Bank in the manner detailed, petitioner and his coguarantors not only reduced their liabilities or obligations under the guaranty contracts, but also protected the Crowley Bank against possible failure, a protection necessarily reflected in their own stockholdings. The Board has frequently held that a payment to protect an investment does not constitute a deductible loss. Charles F. Ayer, 7 B. T. A. 324; Antoinette P. Altmayer et al., 10 B. T. A. 1091; Seufert Brothers Co., 14 B. T. A. 1023; H. R. MacMillan, 14 B. T. A. 1367.
We think the petitioner’s pajonent was in form and substance a capital expenditure creating no relation of debtor and creditor, and that in the taxable year involved he sustained no deductible loss by reason of that payment.
It may be pointed out that even if it appeared that the relation of debtor and creditor had been created between the Crowley Bank and petitioner by reason of the payment involved, i. e., even if the payment had in fact been a payment under the guaranty contracts, it is doubtful that we could afford the petitioner relief upon the record before us, since by the terms of the guaranty contracts petitioner *365 would have been subrogated to the claims and to some parts of the collateral security held by the Federal Eeserve Bank. This would make it necessary for- petitioner to. establish the value, if any, of the specific collateral security he would acquire. The evidence is that the notes and collateral held by the Federal Eeserve Bank, amounting to approximately $1,583,071.86, and to part of which petitioner would have been subrogated if he made a payment under the guaranty contract, had a market value equal to approximately 20 per cent of their face value. Something more definite than this would be required to show a loss by petitioner had a payment under the guaranty contracts resulted in his being subrogated to a, portion of the claims and collateral security held by the Federal Reserve Bank. See Morris Sass, 7 B. T. A. 557.

Judgment wild be entered for the respondent.